IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KENNETH GRAY,

                  Plaintiff,

     v.

ALEXIS FOX, MARILYNN HALE, RACHEL
SADOWSKI, DIONNE CLEMMONS, WISCONSIN
DEPARTMENT OF CORRECTIONS—DIVISION OF
COMMUNITY CORRECTIONS, and THE STATE OF
WISCONSIN,

                  Defendants.

OPINION and ORDER

26-cv-49-jdp

---

Plaintiff Kenneth Gray, proceeding without counsel, asserts that defendant Alexis Fox falsely reported to his parole officers that Gray was selling illegal drugs and had threatened her, which resulted in the revocation of his parole. He also says that his parole officer forced him to wear an ankle monitor, which injured him. Gray has made an initial partial payment of the filing fee as directed by the court.

The next step is for me to screen Gray's complaint and dismiss any portion that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915 and 1915A. In doing so, I must accept his allegations as true and construe the complaint generously, holding it to a less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I conclude that Gray's allegations do not state any claims for relief. But I will give him a chance to file an amended complaint.

ALLEGATIONS OF FACT

The court draws the following facts from Gray's complaint and attachments. Dkt. 1.

The events in the complaint occurred in 2025, when plaintiff Kenneth Gray was a parolee under the supervision of the Wisconsin Department of Corrections' Division of Community Corrections. Defendant Marilynn Hale was Gray's parole officer. Defendant Rachel Sadowski was Hale's supervisor. Defendant Dionne Clemons was the assistant regional chief for the Division of Community Corrections.

Defendant Alexis Fox is a former acquaintance of Gray's who lives in Oshkosh, Wisconsin, where Gray worked and attended school. In March 2025, Fox called the Oshkosh police department six times to report that Gray had threatened her. Oshkosh police forwarded that information to Hale, who ordered Gray to report to her office. Gray did so, where he was detained and taken to the Milwaukee Secure Detention Facility.

The next day, Fox gave a statement to her probation agent, in which she alleged that Gray had entered her house without her consent, threatened her, and admitted to her that he sold cocaine. Dkt. 1-2. Gray denied these allegations. Dkt. 1-3. Nevertheless, Hale initiated proceedings to revoke Gray's parole, which Sadowski co-signed. On March 28, a Division of Community Corrections hearing magistrate found probable cause that Gray had violated his conditions of supervision; he also kept Gray in detention pending his final revocation hearing. Dkt. 1-8, at 17–18. At the final hearing on June 30, an administrative law judge decided not to revoke Gray's parole. Gray was released from detention on July 3.

As a result of his four-month detention during the revocation proceedings, Gray lost his job at EVCO Plastics and had to stop attending school at Fox Valley Technical College. Hale,

2

Sadowski, and Clemmons also decided to increase Gray's rules of supervision after the incident, and they fitted him with an ankle monitor for a period of time, which injured his ankle.

ANALYSIS

Gray is suing the defendants under 42 U.S.C. § 1983 for violating his constitutional rights. Gray's primary claim is that Alexis Fox made false complaints about him, which the parole officer defendants failed to investigate before they detained him and initiated revocation proceedings. I take Gray to be bringing Fourth Amendment false arrest claims and Fourteenth Amendment due process claims against Fox and the parole officers related to this incident.

As for the false arrest claims, a plaintiff may bring a Fourth Amendment false arrest claim against a law enforcement officer if the officer arrested him without probable cause. *See Bentz v. City of Kendallville*, 577 F.3d 776, 779 (7th Cir. 2009). But in this case, Gray's allegations affirmatively establish that the parole officers had probable cause. Gray says that the officers arrested him pursuant to a complaint made by Alexis Fox, who said that Gray had threatened her, entered her home without permission, and told her that he was selling cocaine. Gray says that Fox's complaint was false, but "the existence of probable cause does not depend on the truth of a complaint of wrongdoing." *Williamson v. Curran*, 714 F.3d 432, 441 (7th Cir. 2013). If an officer reasonably believes that a complainant is telling the truth, then the officer can arrest a suspect based on that information without conducting an independent investigation, even if the suspect denies the complainant's allegations. *Id.* Fox's complaint was detailed, and nothing in it would have suggested to a reasonable officer that she was lying. Gray's allegations do not support Fourth Amendment claims against any of the parole officers involved in the decision to arrest him.

Gray also purports to bring a false arrest claim against Fox, but that claim has a different problem. One limitation to constitutional claims brought under 42 U.S.C. § 1983 is that the defendant must have acted "under color of state law." *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). Fox is a private citizen, not a governmental official, and section 1983 does not permit suits based on private conduct, "no matter how discriminatory or wrongful." *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) (internal quotation omitted). Private actors do act under color of law when they work jointly with state actors to violate a person's rights. *See, e.g., L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) ("A private person acts under color of state law when she is a willful participant in joint action with the State or its agents." (internal quotation omitted)). But complaining to law enforcement is not joint action sufficient to give rise to liability under section 1983. *Spiegel*, 916 F.3d at 617. Gray's allegations do not support constitutional claims against Fox.

Gray's allegations do not support any claims under the Fourteenth Amendment Due Process Clause either. To state a procedural due process claim under the Fourteenth Amendment, a plaintiff must allege that (1) he was deprived of a property or liberty interest; and (2) he was entitled to more process than he received. *Cannici v. Vill. of Melrose Park*, 885 F.3d 476, 479 (7th Cir. 2018). Gray has alleged that he was deprived of a liberty interest, because he was detained for almost four months during the pendency of his revocation proceedings. But he doesn't allege that there was any process that he was entitled to that he did not receive; on the contrary, he affirmatively alleges that he received both a preliminary probable cause hearing and a final hearing, during which he was able to contest the allegations against him and ultimately he successfully defended against the revocation of his parole.

Gray also asserts claims against Hale for failing to read him his Miranda rights and against the probation agents and the Department of Community Corrections for injuring his ankle with an ankle monitor. Gray's Miranda rights claim does not require extended discussion. The Supreme Court has held that a failure to comply with the requirements in *Miranda v. Arizona*, 384 U.S. 436 (1966), does not provide a basis for suing an officer for money damages. *See Vega v. Tekoh*, 597 U.S. 134, 141 (2022). I will dismiss the Miranda claim.

As for the ankle monitor claims, Gray asserts that his parole officers violated the Eighth Amendment by forcing him to wear an ankle monitor even though they knew that the ankle monitor was injuring him. A parole officer may violate the Eighth Amendment if she subjects a parolee to restrictive conditions that create an excessive risk to the parolee's health or safety. *See Mitchell v. Kallas*, 895 F.3d 492, 502 (7th Cir. 2018). Gray alleges in his complaint that he "suffers current serious medical conditions caused by exposure to the Electronic Monitoring System (ankle monitoring) and consistent visits." Dkt. 1, ¶ 37. But he doesn't describe these medical conditions, and the photos that he attached of his ankle, Dkt. 1-5, show at most minor bruising near his ankle monitor. Gray's allegations don't support a plausible inference that the ankle monitor posed an excessive risk to his health or safety, so I will dismiss the Eighth Amendment claims.

Most of Gray's allegations do not state a viable claim for relief, nor could they be amended to do so. But I will allow Gray to file an amended complaint to fix the problems I have identified with his Eighth Amendment claims. In drafting his amended complaint, Gray must:

- Carefully consider whether he is naming proper defendants and omit defendants who did not personally participate in, or otherwise cause, a violation of his rights. Gray must take care to allege what each defendant did, or failed to do, to violate his rights.

- Avoid referring to several defendants together. For instance, if more than one defendant has taken a particular action that Gray believes supports a claim, he should identify each defendant who took that action.

- Identify by full name all the individuals he wishes to sue in the amended complaint's caption.

- Omit legal arguments other than explaining what types of claims that he wishes to bring.

If Gray fails to submit an amended complaint by the deadline set below, I will dismiss the entire case.

ORDER

IT IS ORDERED that:

1. Plaintiff Kenneth Gray's complaint, Dkt. 1, is DISMISSED for failure to state a claim upon which relief may be granted.

2. Plaintiff may have until August 5, 2026, to submit an amended complaint that fixes the problems with his Eighth Amendment claims.

3. If plaintiff fails to comply with this order, I may dismiss this case.

4. The clerk of court is directed to send plaintiff a copy of the court's non-prisoner complaint form.

Entered July 8, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

6